OPINION OF THE COURT
Bentley Kassal, J.
issue
The issue, raised in each of these two actions, is the extent to which pretrial disclosure, specifically related to the facts required to maintain a class action, should be allowed prior to the certification of a suit as a class action. In one case, the party seeking disclosure is the plaintiff; in the other is is the defendant.
FACTS
ACTION 1 — NATIONWIDE LEISURE
In this action, the complaint was filed on behalf of nine plaintiffs, and approximately 5,000 other people, who contracted in 1976 with defendant, Nationwide Leisure Corp., to participate in its week long OTC charter tours to London, England. It is based, in large part, on representations in defendants’ advertisements, offering "seven nights at the superior first class Kensington Close Hotel or similar”, and which describe it in detail under the heading "Your Hotel”. The plaintiffs assert that, upon arrival in England, they and the members of their class were informed that the Kensington was unavailable, and were put in "substituted hotels” in remote areas, far away from the section of London where the Kensington is located, and containing none of the advertised characteristics (e.g., spacious rooms, twin beds, radios, televisions, and heated pool) of the Kensington. The complaint alleges fraud and breach of contract and seeks actual and punitive damages.
Plaintiffs seek disclosure of the names, addresses and dates flown of all purchasers of the charter tours, and any com *163 plaints, refunds or litigation resulting from the substitution of hotels. They also seek information with regard to the contracts with the Kensington Close and the other "substituted hotels” and further descriptive information with regard to all of the hotels.
Defendants assert, in response, that, since no order of class determination has yet been made, (1) the production of this information would be unduly burdensome, and (2) could lead to such abuses as client solicitation or maintenance of the action by the lawyers.
ACTION 2 — DELPARK EQUITIES
Here, it is the defendants who seek disclosure, specifically with regard to plaintiffs’ ability to adequately represent their class. The action was commenced on behalf of named plaintiffs and all other tenants in Delmonico’s, a luxury apartment building in New York City, alleging that defendant breached their contractual and statutory obligations in failing to provide various services and improvements which they had promised and which plaintiffs relied upon in entering the rental agreements.
Defendants seek, inter alia, (1) all documents relating to the financial worth of each plaintiff including bank books, (2) the by-laws, certificate of incorporation, and minutes of each corporate plaintiff and (3) all documents relating to agreements with any attorneys in this action and any documents relating to prior representations by any plaintiff or member of the class in any related action.
Plaintiffs advance two objections to defendants’ demands. First, it is claimed that since the issue of class action status is collateral to the merits of the case, it is beyond the scope of disclosure. Secondly, that such disclosure should be granted only to plaintiffs, for it is they who bear the burden of proving the existence of the class.
LAW
There is very little law in this State regarding the extent to which disclosure is allowable to either side pending the class determination. What precedent there is, however, tends to permit discovery wherever necessary to the class determination itself under CPLR 901 and 902. In Matter of Knapp v Michaeux (55 AD2d 1025), the Fourth Department reversed *164 Special Term for its failure to rule on plaintiff’s motion for discovery to obtain the facts necessary to show that class action was appropriate. Citing 2 Weinstein-Korn-Miller (NY Civ Prac, pars 902.02, 902.03), the court said the plaintiff’s motion appeared to be proper. Other courts, in interpreting rule 23 of the Federal Rules of Civil Procedure, the Federal class action statute, have held that the rule "contemplates that depositions or other proof may be utilized to establish the propriety of the class action.” (Goldman Theatres v Paramount Film Distr. Corp., 49 FRD 35, 38.)
It is clear that a fair determination of a motion for class certification, as any other issue, must not unnecessarily exclude relevant information. In this regard the guiding principle of disclosure under the CPLR, that "[tjhere shall be full disclosure of all evidence material and necessary in the prosecution or defense of an action” (CPLR 3101, subd [a]) dictates that such relief be liberally granted unless some countervailing policy is also involved.
GENERAL POLICY CONSIDERATIONS
Class actions, by their very nature, involve several independent and, at times, conflicting policies. CPLR article 9, providing for class actions, was designed to liberalize the requirements for class actions so that individuals with claims that would otherwise not justify the costs of litigation would now be able to pool their resources and collectively seek relief. (See, generally, the statement of Governor Hugh L. Carey in signing the 1975 statute, NY Legis Ann, 1975, p 426.) On the other hand, it was recognized that the class action device was a potent weapon, of great coercive power and subject to gross potential abuse including the stirring up of unwarranted litigation and efforts designed purely for client solicitation. (NY Legis Ann, 1975, p 426.) Thus, provision was made for the speedy determination of whether the action should proceed as a class action or only on behalf of the individually named plaintiffs. (CPLR 902.)
Similarly, with regard to disclosure conducted prior to certification as a class action, countervailing policy considerations have led to conflicting decisional law. On the one hand, the great bulk of the Federal court decisions* have held that *165 precertification disclosure should be limited to determining those elements necessary for class status (as enumerated for our purposes in CPLR 901 and 902) (see, generally, Ann., 24 ALR Fed 872, 880-886, and the cases cited therein) and not as to the underlying merits of the proposed class action. (See, e.g., Eisen v Carlisle & Jacquelin, 417 US 156, 177-179.) On the other hand, the Appellate Division, First Department, has held that in determining whether an action may proceed as a class action, " 'The court may consider the merits of the action * * * [to] eliminate spurious and sham suits as early as possible to avoid the expenditure of both time and money by both the courts and the opponents of the class’ ” (citations omitted; Seligman v Guardian Life Ins. Co. of Amer., 59 AD2d 859, 860).
With these guidelines in mind, the specific disclosure requested here will be evaluated.
DECISION
ACTION 1 — NATIONWIDE LEISURE
The great bulk of the information sought by plaintiffs relates to the requisites for class action status and the merits of the underlying claim. As discussed above, such disclosure, including specifically, information with regard to the elements listed in CPLR 901 and 902, is appropriate at this stage and should be granted under the liberal principles of CPLR 3101 (subd [a]).
One type of information sought, however, presents further questions. Essentially, this information is the names of other potential class members.
The evil generally cited in denying plaintiffs’ request for such disclosure of names and other identifying characteristics of class members is the potential for solicitation and champerty. Once a class action has been certified as such, of course, solicitation is an appropriate integral and statutorily recognized part of the proceeding. (CPLR 904.) Before certification, the potential for abuse is obvious, as where an individual plaintiff improperly engages in massive disclosure and the *166 threat of a class action to coerce settlement of his individual claim, or where such disclosure is sought for purposes outside the class action when a good faith expectation of class certification is not present. (See, generally, Crabtree v Hayden, Stone Inc., 43 FRD 281; Neuwirth v Merin, 267 F Supp 333; Cherner v Transitron Electronic Corp., 201 F Supp 934.)
While the prohibitions against an attorney’s advertising his availability generally for legal services have been stricken down as an improper infringement on First Amendment rights (Bates v State Bar of Ariz., 433 US 350), direct solicitation of individual claims does not stand on the same basis and is properly an area for regulation and judicial control. (Ohralik v Ohio State Bar Assoc., 436 US 447.)
However, it is not inconceivable that such information may be required by an individual plaintiff in order to obtain further facts necessary to support his application for class status. In such a case, the court should not "place plaintiffs’ counsel in the anomalous position of not being able to sustain its class contentions for lack of evidentiary support, yet unable to adduce such support by reason of its inability to prove class standing.” (Branch v Reynolds Metals Co., 17 Fed Rules Serv 2d 494, 495.)
THRESHOLD TEST FOR DISCLOSURE OF NAMES OF POTENTIAL CLASS MEMBERS
Weighing the relative benefits and problems with precertification disclosure of the names of potential class members, it is clear that every such request must be considered sui generis. There need be no absolute proscription against such discovery, but plaintiff should first bear the burden of first showing that the following factors exist: (1) the complaint states a cause of action against the defendant; (2) the cause of action is not unique to the individual plaintifffs); (3) there is a bona fide need to discover the names of other class members in order to obtain information necessary to prove the prerequisites for class action certification, pursuant to CPLR 901 and 902.
In the present action, brought by nine named plaintiffs as individuals, there is no evidence that plaintiffs have need to contact other potential class members in order to obtain information, as to the prerequisites for class certification, especially since the nature of the action is such that the extent of the class can be fully determined by disclosure as to simple quantitative matters, such as the number of travelers *167 who were put in hotels other than the Kensington Close or subjected to various other alleged deviations from the advertised program.
Accordingly, defendants’ motion for a protective order pursuant to CPLR 3103 (subd [a]) is granted only to the extent of striking any requests calling for the names of potential class members.
ACTION 2 — DELPARK EQUITIES
Defendants seek disclosure as to the named plaintiffs’ ability to adequately represent the class, specifically their financial ability to maintain and fully prosecute the action and whether their counsel, by reason of conflict of interest, breach of ethics or other basis, may properly protect the interests of class members.
As to the latter area, there is authority that such information is properly within the scope of reasonable disclosure. (Stavrides v Mellon Nat. Bank & Trust Co., 60 FRD 634; but see, contra, Sayre v Abraham Lincoln Fed. Sav. & Loan Assn., 65 FRD 379; Foremost Promotions v Pabst Brewing Co., 15 FRD 128.) Further, as stated by Dean McLaughlin in his Practice Commentaries to CPLR 901: "An ancillary, but perhaps more important, consideration is the competence of counsel representing the class.” (McKinney’s Cons Laws of NY, Book 7B, CPLR 901, C901:5.)
While the defendant should be afforded certain information in this regard, there is no reason for the entire attorney-client relationship to be thrown open at this stage, absent a prima facie demonstration of impropriety. Article 9, in its attempt to provide a flexible and functional scheme for class actions, provides for a "mini-hearing” within a short time after the action is commenced (CPLR 902), and that juncture would appear to be the proper time and place to raise such questions and to fashion a method for obtaining whatever information is appropriate.
Accordingly, a protective order is granted as to those questions relating to the attorney-client relationship, without prejudice to renewal at the "mini-hearing”.
As to the other area of disclosure, while the court is hesitant to make plaintiffs open all of their financial books and records at this stage, absent some form of guarantee from plaintiffs that they are financially ready and able to ade *168 quately advance the funds necessary to properly prosecute this action, or that they are available elsewhere, such disclosure is appropriate. The expenses of investigation, preparation, notification and attorney’s fees necessary to maintain a class action may be extremely high. While an individual plaintiff may decide to bear the risk of being ill-prepared, a class representative has a fiduciary responsibility to see that the other class members relying on him are properly represented. As stated by the court in Ralston v Volkswagenwerk, A. G. (61 FRD 427, 433-434):
"In order adequately and fairly to represent the interests of the class, the named plaintiffs must sustain the burden of showing that their resources are adequate to pursue this lawsuit to completion, even in the absence of any additional financial contributions from members of the purported class
* * *
"Seeking to represent a large group of people as a class representative in a lawsuit is a very heavy responsibility. It should never be undertaken lightly, and the court should allow such representation only upon a firm foundation that the named plaintiffs are willing and financially able to shoulder that burden * * * Inadequate financing threatens the procedural and substantive interests of all members of the class”. (See, also, Weitzman v Bache Halsey Stuart, Inc., NYLJ, Nov. 4,1977, p 5, col 1.)
Accordingly, as to this information the motion for a protective order is denied; however, if assurance, by way of bond or other device can be given as to the financial ability of the plaintiffs, this may obviate the need for further disclosure. The burden is on the plaintiffs to fashion such a device if they seek to avoid disclosure.
CONCLUSION
The goal of CPLR article 9, as proposed by the Judicial Conference was stated as follows: "What is needed is a more flexible and functional approach which maintains judicial control, but does not unduly restrict the court within traditional legalisms and the passive role it habitates within the adversary system.” (Twenty-First Annual Report of NY Judicial Conference, 1976, pp 248-249.) As stated by the United States Court of Appeals, First Circuit: "if a class action is to be managed with sensitivity both to plaintiffs’ reasonable demands and to defendants’ responsibilities, the * * * judge *169 must keep close to the heart of the litigation” (Yaffle v Powers, 454 F2d 1362, 1367).
Finally, CPLR 902, providing the procedure for class determination and the "mini-hearing” states: "An order under this section may be conditional, and may be altered or amended before the decision on the merits on the court’s own motion or on motion of the parties”.
It is clear that our class action statute assumes and requires the intensive and continuing involvement of the court in a fluid process from the initial pleadings to the final judgment. Within this process, it would be more appropriate for disclosure to proceed in discreet steps under supervision.
(For all these reasons, this court feels that the goals of the statute would best be met by assigning class actions directly to the Individual Calendar Parts of this court [section 636.2 of the Rules of the Supreme Court, New York and Bronx Counties; 22 NYCRR 636.2] which are perfectly suited for such ongoing supervision.)

 Due to the relative infancy of our current liberalized New York class action statute (CPLR art 9, enacted as L 1975, ch 207) there is a paucity of decisions *165 interpreting its provisions. Of necessity, therefore, resort must be made to Federal decisional law interpreting rule 23 of the Federal Rules of Civil Procedure. It should be recognized, however, that article 9 "adopts the general scheme of the Federal Rule but is simpler in its basic structure and more consistent in its functional orientation.” (Twenty-First Annual Report of NY Judicial Conference, 1976, p 250.)