■ Z. HERSHEL SMITH, on Behalf of Himself and All Others Similarly Situated, Respondent, v ATLAS INTERNATIONAL TOURS et al., Appellants, et al., Defendant. — Order, Supreme Court, New York County, entered August 19, 1980, unanimously modified, on the law and the facts, and in the exercise of discretion to the extent of granting defendant Atlas' cross motion for a protective order by striking plaintiff's demand for complaint letters from clients who traveled on tours other than the one in question (Item No. 3B of the first notice for discovery and inspection), and the names and addresses of all clients who traveled on the tour in question (Interrogatory No. 2) and such former clients as have registered complaints about other tours over the last 10 years (Interrogatory No. 4); and substituting therefor a direction that Atlas provide plaintiff with a statement as to the number and substance of all complaints, written and oral, respecting this tour, the number and substance of any settlements of such complaints, and the number of such complainants who are New York residents; and the order is otherwise affirmed, without costs. Plaintiff was a client of defendant Atlas, a travel agent catering to the "kosher" Jewish trade, i.e., to travelers desiring accommodations for the Jewish holidays at locations where the food would be prepared and served in accordance with Jewish dietary laws. The tour on this occasion consisted of accommodations for some 750 vacationers at the defendant El Conquistador Hotel in Puerto Rico for the Passover holiday in 1979. The brochure advertised the hotel as having "just completed major renovations", and offering "Glatt-Kosher" gourmet cuisine, which is the ultimate in strict adherence to Jewish dietary laws, under resident rabbinical supervision. Plaintiff, a Rhode Island resident who had traveled on Atlas-booked tours in the past, alleges that this time he found his accommodations left something to be desired. The complaint alleges that the hotel "was not fully renovated [as advertised,] but in fact was in the process of being renovated during the period in question", thus causing the vacationers great inconvenience and discomfort. It is further alleged that the food was not only prepared in a manner which violated Jewish dietary laws, thus being far from "glatt-kosher", as advertised, but that it was prepared under unsanitary conditions. Specifically, the complaint alleges a failure to "maintain proper separation of dairy and meat products" in the kitchen. Thus, according to plaintiff, there was a fraudulent inducement to Jews of Orthodox and Conservative persuasion to book for this luxury tour. Atlas, in denying the allegations in the complaint, counterclaimed that plaintiff falsely and maliciously defamed it in maligning Atlas' "reputation for hon-

esty, reliability, and integrity for providing the finest in Kosher and Glatt Kosher vacation tours." It is clear that the allegations concerning kashruth, strict adherence to Jewish dietary laws, go to the very essence of Atlas'· trade in offering kosher tours to a rather select clientele. This appeal relates to plaintiff's efforts to obtain preclass certification disclosure for the avowed purpose of forming the class he purports to represent. Plaintiff directs his discovery basically to three areas: (1) contracts and correspondence relating to supervision of the preparation of food under dietary laws; (2) complaint-related correspondence concerning this particular tour, including the identities of all persons traveling on this tour; and (3) correspondence relating to similar complaints received by Atlas from its customers over the last 10 years. Specifically, the "First Notice for Discovery and Inspection" and the "First Set of Interrogatories" sought not only all contracts for the delivery, preparation and supervision of food, but also all correspondence with members of the purported class, and with governmental regulatory and enforcement agencies. The notice further sought copies of all food preparation manuals used by contracted kosher supervisory personnel, as well as all correspondence with such personnel. Finally, plaintiff sought "All complaint letters from persons who participated in similar 'Glatt Kosher' vacation package tours sold by defendants during the last ten years", which complaints were in substance related to the food served and the manner of its preparation and service. We find no impropriety in plaintiff's seeking documents, manuals and correspondence related to the supervision over procurement, preparation, delivery and service of food in accordance with Jewish dietary laws. The denial of a protective order in this respect (the subject of Interrogatories Nos. 1, 3, 5 and 7, and Documentary Discovery Requests Nos. 1A, 1B, 1C, 2D and 3A) was thus proper. There is similarly no impropriety in requiring the disclosure of complaints and related inquiries from governmental agencies, such as the New York Attorney-General (subject of Discovery Request No. 2B). The crux of this appeal concerns the· disclosure of identities of Atlas customers.* Discovery Requests Nos. 2A and 2C properly seek all complaint letters from plaintiff and his fellow vacationers on this tour, and correspondence in response thereto, directly related to the matter at issue. But Interrogatory No. 2 goes a step further, seeking "the names and addresses of all persons who purchased the vacation package tours in issue". There is no basis for such disclosure at this stage of proceedings prior to class certification. Indeed, there is an obvious potential for harm to Atlas should there be unsupervised solicitation of complaints from all travelers on the tour. There is simply no basis for Interrogatory No. 4 and Discovery Request No. 3B, seeking the identities of all Atlas customers who have registered complaints about preparation and service of food in accordance with Jewish dietary laws on such tours over the "last ten years". In forming a class, plaintiff should be limited to those travelers who joined him on this particular tour in 1979 (see *Reiken v Nationwide Leisure Corp.,* 75 AD2d 551, 552-553, app dsmd 50 NY2d 1059). For an action to proceed as a class action, the plaintiff must demonstrate factually that he represents a genuine class *(Reiken v Nationwide Leisure Corp., supra).* All that is required to form the class in this instance is an indication of approximately how many others share this plaintiff's complaint *(Dupack v Nationwide Leisure Corp.,* 70 AD2d 568). This information can be gathered by obtaining

---

* One further area, seeking to probe the business and proprietary relationship between Atlas and the El Conquistador Hotel (subject of Interrogatory No. 6) is not pursued on this appeal.

the identities of all those who have complained to defendants about this tour. The additional requirement for establishing a sufficient number of New York residents in the class *(Bloom v Cunard Line,* 76 AD2d 237) will be met when plaintiff has had an opportunity to review the addresses of those who have registered complaints about this tour. An unsupervised solicitation of complaints from all travelers, which would be the inevitable fallout from a disclosure of identities of all Atlas customers on this tour, is unwarranted. The purpose of preclass certification discovery is to ascertain the dimensions of the group of individuals who share plaintiff's grievance, not to plant the seed of litigation in the minds of those who until now have given no indication of being aggrieved. Concur — Fein, J. P., Sandler, Markewich and Carro, JJ.